UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JOSEPH GONZALES,

                Petitioner,                    Case No. 2:14-cv-202

v.                                        Honorable R. ALLAN EDGAR

THOMAS MACKIE,

                Respondent.

_____/

## MEMORANDUM AND ORDER

Petitioner Joseph Gonzales, filed this petition for writ of habeas corpus challenging his convictions after a no contest plea to assault with intent to murder, assault with intent to rob while armed, two counts of armed robbery, carjacking, two counts of carrying a concealed weapon, entering without breaking with intent to commit a felony, extortion, possession of a firearm by a felon, and seven counts of possession of a firearm during the commission of a felony. Petitioner was sentenced as a fourth habitual offender to prison terms of 23 to 40 years on the assault, robbery and carjacking convictions, 10 to 20 years on the extortion conviction, and 2 to 5 years on the concealed weapon, entering without breaking, and felon in possession convictions. Petitioner also was sentenced to 2 years on the felony firearm convictions.

Petitioner argues that:

I. The Michigan Court of Appeals decision is an unreasonable application of *Strickland v. Washington* when counsel failed to investigate alibi and instead forced Petitioner to accept plea. Conviction obtained by plea of guilty which was unlawfully induced or not made voluntary with understanding of the nature of the charge

and the consequences of the plea.  I informed counsel that I wanted a jury trial and the trial court of the same.  I informed counsel I have two alibis and he refused to investigate them and instead forced me to accept a plea.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective.  Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute.  Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  *Id.*  A state court decision will be

deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).[1]

---

[1]Respondent is not arguing that Petitioner failed to exhaust his state remedies or that this petition was filed outside the statute of limitations period.

Petitioner argues that he received ineffective assistance of counsel and was pressured into entering a plea.  Petitioner moved for new counsel on February 14, 2012, after he was given a plea offer by the prosecutor.  Petitioner informed the court that he did not have any police reports, preliminary examination transcripts, was not informed about his case by counsel, and did not learn of the plea agreement until that day.  The court informed Petitioner that the plea offer was made that day and that Petitioner's lawyer was one of the better lawyers in the Saginaw area.  PageID.297.  Petitioner indicated that he wanted to reject the plea deal and go to trial.  Petitioner indicated that he wanted to fire his attorney.  The court indicated that Petitioner could not fire his attorney because he was appointed by the court, but that Petitioner was free to hire his own attorney if he chose to do so.  PageID.299.  On March 26, 2012, a hearing was held and Petitioner made a request for substitute counsel because his counsel refused to file a copy of a motion Petitioner had prepared.  Petitioner's counsel indicated that he had not filed the motion.  The court asked Petitioner to state the legal reasons for his motion, and explained that counsel needed good reasons to file a motion.  PageID.304.  Further, the judge explained that defense counsel was "one of the best defense attorneys around" and if he substituted counsel for Petitioner, the attorney he received would not be as good as the attorney he already had.  *Id*.  Petitioner entered a plea deal on May 14, 2002, instead of proceeding to trial on that date.  The prosecutor set forth the deal:

> The People have made the following offer to the defendant, through his counsel; should he plead nolo contendere, no contest, to both Informations, all counts, the People recommend that the minimum sentence he receive on the life offense does not exceed 23 years.  This, in effect, would give him a 25 year minimum.  He would have to serve the two years on the felony firearm first.
>
> The sentencing guidelines that we have computed for these cases, on the 668 case, is 10 and a half  to 35 years.   And on the 59 case, is 18 years 9 months to 62 and one half years.

4

PageID.309-310.  After the offer was stated in court, Petitioner's counsel indicated that Petitioner wanted to proceed to trial.  The court discussed Petitioner's options regarding accepting the plea agreement or proceeding to trial.  The judge explained: "so you are saving yourself 37 years potential prison time with a no contest plea."  PageID.311.  The judge further stated that Petitioner could be released from prison when he was 45 years old, as opposed to when he was 82 years old.  *Id.*  Petitioner indicated he would not take the deal if he was not offered credit for time that he had already served.  The prosecutor indicated that Petitioner would be entitled to credit for time served.  The judge instructed Petitioner to think about his options.  The court indicated that trial would begin that day at 1:30 pm if Petitioner did not take the deal.  The judge stated: "you will get your day in court.  You're presumed innocent.  You will get all your rights.  But I just want you to make an intelligent decision." PageID.312.

The court took a break at 9:18 am.  At 11:41 am, the court went back on record.  Petitioner indicated that he wanted to plead only to one case which involved carjacking, and to proceed to trial on the other case.  PageID.314.  The judge explained to Petitioner that if he pleaded in the carjacking case, he faced a guideline range of up to 35 years imprisonment, and that the prosecutor had offered him a deal that if he pleaded on both cases that he would not face more than 25 years imprisonment on his minimum term.  *Id.*  Further, the trial judge explained that if Petitioner pleaded to the carjacking case and was also found guilty in the other case, the prosecutor would ask for the carjacking conviction to be stacked on top of the other offense, so that the sentences would run consecutively.  PageID.315.  The court indicated that he might not sentence Petitioner in that manner, but that it is a potential risk depending on the presentence investigation. *Id.*  The court told Petitioner to think about it over lunch and took a break at 11:44 am.  PageID.316.  After the lunch hour, Petitioner agreed to take the plea deal and to plead nolo contendere to all of the charges.

5

The constitutional validity of a guilty plea entered in the state courts is to be judged under the due-process standard set forth by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238 (1969).   Under *Boykin*, a guilty plea must be knowing and voluntary in order to withstand scrutiny under the Due Process Clause.   A criminal defendant enters a guilty plea knowingly when he understands the nature of the charge and the "direct consequences" of his guilty plea.  *See Brady v. United States*, 397 U.S. 742, 748 (1970).   In general, a defendant is aware of the direct consequences of the plea if he or she is aware of the maximum and minimum (if any) sentence that may be imposed.  *See King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir.), *cert. denied*, 504 U.S. 1222 (1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir.), *cert. denied*, 502 U.S. 816 (1991).

When a state prisoner brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding.  *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).   Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself.  *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings.  *Id.* at 328; *see Parke v. Raley*, 113 S. Ct. 517, 523 (1992).  In the present case, after a thorough interrogation of Petitioner, the state judge found that Petitioner's plea of guilty was entered knowingly and voluntarily.   At the hearing, Petitioner indicated that he understood the rights that he was giving up by taking the plea deal and foregoing trial.

> The Court: Okay.  Did you have a chance to read and sign an advice of rights form?
>
> The Defendant: I ain't signed it yet.

The Court: Did you review it?

The Defendant: Yes.

The Court: Okay. Sign it if you understood your rights. Are you able to read, sir?
The Defendant; Yup.

The Court: And do you understand the rights contained in that form?

The Defendant: Yeah.

The Court: Mr. Bush, did you go over that form with your client?

Mr. Bush: Yes.

The Court: Did he understand his rights?

Mr. Bush: I believe so.

The Court: Do you understand that if I accept your plea you would be waiving or giving up each of the rights contained in that form?

The Defendant: Yup.

The Court: Yes?

The Defendant: Yes.

The Court: If I accept your plea there is no automatic right to appeal. Instead, you would have to ask the Court of Appeals to hear your case, and it would be up to them whether they would do so. Do you understand that?

The Defendant: yeah.

The Court: Yes?

The Defendant: Yes.

The Court: There are some claims that you will be giving up if I accept you plea. You will be giving up any claim that your plea was the result of promises or threats that I am not told about today. Do you understand that?

The Defendant: Yes.

The Court: Also you give up any claim it was not your own free choice to plead no contest.  Do you understand that?

The Defendant: Yes.

The Court: Listen to me carefully on this one.

I am not bound to follow the sentence agreement.  Okay?  But if I don't, I will allow you to withdraw you plea and proceed to trial.  Do you understand that?

The Defendant: Yes.

The Court: Okay.  Other than what we have said in court today has anyone promised you anything to get you to plead no contest?

The Defendant: No

The Court: Has anybody threatened you to get you to plead no contest?

The Defendant: No.

The Court: Is it your own free choice to plead no contest?

The Defendant:   Yes.

PageID.329-331.

As a result of his plea, Petitioner limited his exposure to a much more significant term of imprisonment.   The record establishes that Petitioner entered into a voluntary and knowing plea. A valid guilty plea extinguishes claims that arose prior to the plea.

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759 (1970)].

8

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

Refining these "standards" for attacking a guilty plea in a subsequent opinion, the Court held:

> [T]he two-part *Strickland v. Washington* [466 U.S. 668 (1984)] test applies to challenges to guilty pleas based on ineffective assistance of counsel.  In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, *supra*, and *McMann v. Richardson*, *supra*.  The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  Despite Petitioner's claim of ineffective assistance of counsel, Petitioner has failed to show that he received advice from counsel that was ineffective or that coerced him to accept the plea deal.  At sentencing, Petitioner asked to withdraw from his plea because he was receiving "more time than how old I am."  Page ID.339.  Petitioner further indicated that he should have received substitute counsel due to lack of communication.  Petitioner told the judge: "You keep saying this man right here a good lawyer.  Man, he ain't no good lawyer.  Man, he ain't even communicate at all."  PageID.340.  The court denied Petitioner's motion to withdraw his plea indicating that Petitioner understood his rights and was given sufficient time to consider his plea.  PageID.341.  Petitioner again moved to withdraw his plea which the court denied after a hearing on October 8, 2012.  PageID.347-354. Petitioner has failed to show that he did not enter into a knowing and voluntary plea.  There exists nothing in the record that can support his claim that he was coerced to accept his plea or that his counsel was not prepared to go to trial.  Petitioner has failed to show that the state court decisions resulted in any decision that was contrary to, or involved an unreasonable

9

application of, clearly established federal law as determined by the Supreme Court of the United States; or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[2]

Accordingly, the Petition is Dismissed.

In addition, if Petitioner should choose to appeal this action, a certificate of appealability is denied as to each issue raised by the Petitioner in this application for habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The undersigned concludes that reasonable jurists could

---

[2]To the extent that Petitioner argues that the claims presented in his motion for relief from judgment are included in this petition, those claims are procedurally defaulted because Petitioner never appealed the denial of his motion to the Michigan Court of Appeals or the Michigan Supreme Court and Petitioner has failed to show cause and prejudice for his procedural default.  *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  Moreover, to the extent that those claims relate to the plea, they lack merit because the record establishes that Petitioner entered a knowing and voluntary plea.

10

not find that a dismissal of each of Petitioner's claims was debatable or wrong.  Therefore, the court

will deny Petitioner a certificate of appealability.

      A Judgment consistent with this Memorandum and Order will be entered.

      SO ORDERED.


Dated: _____6/14/2016_____        ___*/s/ R. Allan Edgar*_____
                                              R. ALLAN EDGAR
                                            UNITED STATES DISTRICT JUDGE